UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELECTRICAL WORKERS PENSION PLAN, LOCAL 103, IBEW, and MICHAEL P. DONOVAN, as Administrator of the Electrical Workers Pension Plan, Local 103, IBEW, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD R. HEROLD, Jr., <br><br> Defendants. | Civil Action No. 18-cv-11037-ADB |

## **MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT**

BURROUGHS, D.J.

      This is an action brought by Electrical Workers Pension Plan, Local 103, IBEW (the "Plan") and Michael P. Donovan, Administrator of the Pension Plan ("Donovan" and, together with the Plan, "Plaintiffs") pursuant to the Employee Retirement Income Security Act ("ERISA") and federal common law to recover more than $50,000 in misappropriated pension funds and associated costs. [ECF No. 11 ("Amended Complaint" or "Am. Compl.") ¶ 1]. Currently pending before the Court is Plaintiffs' motion for a default judgment following Donald R. Herold, Jr.'s ("Defendant") failure to appear or otherwise defend this action. [ECF No. 19]. Upon the request of the Court, the motion for default judgment was supplemented with additional briefing. [ECF No. 21]. For the following reasons, Plaintiffs' motion for a default judgment [ECF No. 19] is GRANTED.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

      The Court summarizes the salient facts alleged in the Amended Complaint and accepts all well-pleaded facts as true for purposes of this Memorandum and Order. See Conetta v. Nat'l

Hair Care Ctrs., Inc., 236 F.3d 67, 76 (1st Cir. 2001). Charles Harmon was a participant in the Plan who retired in 1988 and began receiving monthly retirement benefits. [Am. Compl. ¶ 6]. Upon his death in 1994, his widow, Jo Ann Harmon, began receiving monthly benefits as a surviving spouse, which were deposited directly into her bank account. [Id. ¶¶ 7–8]. Mrs. Harmon died on October 8, 2012. [Id. ¶ 9]. The Plan was not notified of her death and sent monthly benefits to Mrs. Harmon's account until August 2017, which totaled $54,511.57. [Id. ¶¶ 11, 14]. The Social Security Administration's Death Master File, which the Plan checks monthly, did not reflect Mrs. Harmon's death. [Id. ¶ 12]. The Plan learned of her death through a death audit conducted by a commercial service in August 2017. [Id. ¶ 13].

On May 21, 2018, Plaintiffs brought this action against a "John Doe" defendant because they did not know who had misappropriated the pension funds. [ECF No. 1 ¶¶ 16–19]. Plaintiffs sought and received a subpoena from the Court to obtain bank records identifying who had control over Mrs. Harmon's account, which was where the monthly benefits had been deposited. [Am. Compl. ¶ 16]. The account records identified Defendant, who is Mrs. Harmon's son, as the person who controlled the account and had withdrawn funds from the account. [Id. ¶¶ 16, 17].

On April 12, 2019, after two extensions of time to serve the complaint were allowed by the Court, Plaintiffs filed the Amended Complaint naming Donald R. Herold, Jr. as the defendant. See [ECF Nos. 5, 7, 9–11]. Defendant was served on April 2, 2019, and his answer was due on April 23, 2019. See [ECF No. 12]. On May 16, 2019, the clerk entered a default as to Donald R. Herold, Jr. [ECF No. 15]. On June 17, 2019, Plaintiffs filed a motion for default judgment. [ECF No. 19]. Attached to Plaintiffs' motion for default judgment was a letter from Defendant stating:

> I am unable to get council [sic] either from legal aid or paying myself. I do not know how to proceed other than to say I am guilty. I would like to [r]epay this lawsuit. However, as you will see from my income and expenses [b]elow I cannot pay up front what the plaintiff would like. And between legal [f]ees and interest I may be not able to repay [i]t all. Therefore, I must rely on the court's decision.

[ECF No. 19-3 at 5]. Defendant did not respond to the motion for default judgment.

## II. DISCUSSION

Pursuant to Rule 55(b), a plaintiff seeking a default judgment "must apply to the court" if the amount of damages claimed is not a "sum certain." Fed. R. Civ. P. 55(b). The Court must first assure itself that it has both subject matter jurisdiction and personal jurisdiction over the action. Plasterers' and Cement Masons' Local 40 Pension Fund v. Capital Curbing Corp., No. 09-cv-00236-WES-DLM, 2010 WL 1424722, at *2 (D.R.I. Mar. 12, 2010), adopted by 2010 WL 1376293 (D.R.I. Apr. 6, 2010). Once satisfied that jurisdiction is proper, the Court reviews the well-pleaded facts alleged in the complaint to determine whether they state a claim for which relief may be granted. Ramos-Falcon v. Autoridad de Energia Electrica, 301 F.3d 1, 2 (1st Cir. 2002). Finally, if the Court finds that the complaint states a claim, it calculates damages. See G. & C. Merriam Co. v. Webster Dictionary Co., 639 F.2d 29, 34 n.7 (1st Cir. 1980).

### A. Jurisdiction

The Court "has an affirmative duty to assure itself that it has jurisdiction over both the subject matter and the parties" before entering a default judgment. Plasterers' and Cement Masons' Local 40 Pension Fund, 2010 WL 1424722, at *2.

This Court has subject matter jurisdiction over the ERISA claim pursuant to 29 U.S.C. § 1132(e)(1). See 29 U.S.C. § 1132(e)(1) ("[T]he district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by . . . a . . . fiduciary . . . ."). The Court also has subject matter jurisdiction over the conversion claim pursuant to 28 U.S.C.

3

§ 1367 because the claim is closely related to and part of the same case or controversy as the ERISA claim. See 28 U.S.C. § 1367 ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . .").

The Court has personal jurisdiction over Defendant. "Any district court in which a plaintiff brings an action under Title I of ERISA will have personal jurisdiction over the defendant, if the defendant is properly served and has sufficient minimum contacts with the United States." Plasterers' and Cement Masons' Local 40 Pension Fund, 2010 WL 1424722, at *3 (footnote omitted) (quoting Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co., 440 F.3d 870, 875 (7th Cir. 2006)). "Furthermore, sufficient contacts exist whenever the defendant is served within the sovereign territory of the United States pursuant to a federal statute or civil rule." Univ. of Mass. Med. Ctr. v. C & M Corp., 16 F. Supp. 2d 110, 111 (D. Mass. 1998) (citing United Elec. & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1085–86 (1st Cir. 1992)). "ERISA provides for nationwide service of process, and [Fed. R. Civ. P. 4(k)(1)(C)] constitutes the mechanism for exercising such extraterritorial service." Id. at 112. Here, Defendant resides in North Carolina. [Am. Compl. ¶ 4]. A return of service was filed on April 12, 2019. [ECF No. 12]. "By virtue of the fact that [Defendant] was lawfully served within the United States pursuant to a federal statute . . . this Court has personal jurisdiction over [Defendant]." C & M Corp., 16 F. Supp. 2d at 112 (citing United Elec., 960 F.2d at 1085–86).

**B. Liability**

On a motion for a default judgment, the Court considers "all well-pleaded factual allegations as true . . . to determine whether [the complaint] alleges a cause of action." Ramos-Falcon, 301 F.3d at 2; see also Franco v. Selective Ins., 184 F.3d 4, 9 n.3 (1st Cir. 1999) ("A party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated."). Where the complaint contains facts sufficient to state a claim upon which relief can be granted, the defendant's liability is established at the time of default. See Hooper-Haas v. Ziegler Holdings, LLC, 690 F.3d 34, 41 (1st Cir. 2012); Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 13 (1st Cir. 1985).

    1. Liability for Breach of Fiduciary Duty Under ERISA

The Amended Complaint asserts a claim against Defendant in his role as an ERISA fiduciary and seeks monetary and equitable relief. See [Am. Compl. at 3–4 (citing 29 U.S.C. §§ 1002(21)(a)(i), 1104, 1106(b)(1), 1109, 1132(a)(3))]. ERISA designates individuals who have authority or control over plan assets or who have any discretionary authority in the administration of a plan as fiduciaries. 29 U.S.C. §1002(21)(A) ("[A] person is a fiduciary with respect to a plan to the extent . . . he exercises . . . any authority or control respecting management or disposition of its assets . . . or . . . he has any discretionary authority or discretionary responsibility in the administration of such a plan."). ERISA imposes a host of restrictions on plan fiduciaries. This includes requiring that a fiduciary "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of: . . . providing benefits to participants and their beneficiaries . . . ." Id. § 1104(a). ERISA also prohibits a fiduciary from "deal[ing] with the assets of the plan in [their]

own interest or for [their] own account." Id. § 1106(b)(1). When a fiduciary violates his duties under ERISA, he is personally liable for losses to the plan caused by the breach of his fiduciary duty. Id. § 1109(a) ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach . . . ."). In addition, ERISA permits a plan fiduciary, such as the Plan Administrator, to seek "appropriate equitable relief" to redress violations of ERISA. Id. § 1132(a)(3).

Under this framework, the Amended Complaint states an ERISA claim against Defendant. The Amended Complaint establishes that ERISA applies to the pension account in question. [Am. Compl. ¶ 2]. The monthly benefits that were incorrectly paid into Mrs. Harmon's account are indisputably Plan assets. See W. Va. Laborers Pension Tr. Fund v. Burkhammer, No. 2:10-cv-01120-TEJ, 2013 WL 3754822, at *3 (S.D.W. Va. July 15, 2013); Int'l Painters & Allied Trades Indus. Pension Fund v. Aragones, 643 F. Supp. 2d 1329, 1336–37 (M.D. Fla. 2008). The Amended Complaint alleges that Defendant had control over the pension account after his mother passed away and that he was responsible for making decisions about how the Plan assets in that account were used. [Am. Compl. ¶ 16]. This level of discretion is sufficient to establish that Defendant was a fiduciary within the meaning of ERISA. See W. Va. Laborers Pension Tr. Fund, 2013 WL 3754822, at *3; Int'l Painters & Allied Trades Indus. Pension Fund, 643 F. Supp. 2d at 1336–37. The Amended Complaint further claims that Defendant breached his fiduciary duties by failing to notify the Plan of his mother's death and by withdrawing the funds that the Plan continued to transfer into her account, ultimately appropriating the funds for his personal use. [Am. Compl. ¶¶ 20–21]. Defendant's use of the Plan assets in his mother's pension account for his own gain constitutes a prohibited transaction

6

under the terms of § 1106, which proscribes a fiduciary's use of plan assets for personal benefit, as well as a breach of fiduciary duty under § 1104, which requires that fiduciaries "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries."[1]

2. Conversion Liability

In addition to a claim under ERISA, the Amended Complaint also alleges a claim of conversion under federal common law based on Defendant's withdrawal of the funds that the Plan transferred to his mother's account after her death. [Am. Compl. ¶¶ 1, 23 (stating that "[t]his is an action . . . under federal common law" and asserting a claim for conversion)]. While federal courts are authorized to develop federal common law under ERISA, Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110 (1989), the Supreme Court has observed that ERISA's "six carefully integrated civil enforcement provisions . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly," Mass. Mut. Life Ins. v. Russell, 473 U.S. 134, 146 (1985). The First Circuit has similarly warned courts to be "careful not to allow federal common law to rewrite ERISA's carefully crafted statutory scheme." See State St. Bank & Tr. Co. v. Denman Tire Corp., 240 F.3d 83, 89 (1st Cir. 2001); see also Mauser v. Raytheon Co. Pension Plan for Salaried Emps., 239 F.3d 51, 57 (1st Cir. 2001) (explaining that, in limited circumstances, a court may properly allow a federal common law claim "when there is, in fact, a gap in the structure of ERISA or in the existing

---

[1] Although Plaintiffs focused only on § 1104 when ordered by the Court to "articulat[e] the legal basis for Defendant's liability under ERISA," [ECF No. 20], the Court addresses § 1106 here because it concludes that Defendant's conduct violated both §§ 1104 and 1106. See, e.g., [ECF No. 21 at 6 (characterizing Defendant's conduct of "misappropriating plan assets for his own personal use" as a violation of a fiduciary's standard of care under § 1104 and not as a prohibited transaction by a fiduciary under § 1106)]. In addition, because the Court finds liability under §§ 1104 and 1106 on the facts alleged, the Court does not address whether Defendant's failure to notify the Plan of his mother's death constitutes a separate breach of fiduciary duty.

federal common law relating to ERISA"). Where the Court has found liability under ERISA sufficient to support Plaintiffs' claim for damages, the Court declines to reach the question of whether it should recognize a claim for conversion under federal common law. Cf. It's Greek to Me, Inc. v. Fisher, No. 17-cv-04084-KHV, 2018 WL 953111, at *8 (D. Kan. Feb. 20, 2018) (declining to recognize a federal common law claim for conversion "find[ing] no reason to alter or add to the . . . remedies Congress created through ERISA"); Ferry v. Mut. Life Ins. Co. of N.Y., 868 F. Supp. 764, 777 (W.D. Pa. 1994) (declining to recognize a federal common law claim for conversion based on "the absence of any authority recognizing such a conversion claim under ERISA"). Accordingly, the Court does not find Defendant liable for conversion.

### C. Damages

Although entry of default establishes liability, it does not establish the amount of damages owed to the plaintiff for purposes of default judgment. See G. & C. Merriam Co., 639 F.2d at 34 n.7. In calculating damages, the Court may conduct a hearing but is not required to do so, particularly where the facts alleged, together with affidavits submitted by the moving party, adequately establish the amount of the default judgment. See In re The Home Rests., Inc., 285 F.3d 111, 114–15 (1st Cir. 2002) (district court did not abuse its discretion by entering default judgment without a hearing, where there was "no uncertainty about the amounts at issue," the pleadings contained "specific dollar figures," and the court requested and received affidavits in support of the default judgment).

Here, Plaintiffs seek a default judgment in the amount of $77,070.46, comprised of the following: (i) $54,511.57 in principal, (ii) $13,521.39 in lost investment income, (iii) $8,587.50 in attorney's fees, and, (iv) $450 in costs. [ECF No. 21 at 9]. Plaintiffs support their request of

the principal amount with an affidavit from the Plan Administrator, which the Court credits. [ECF No. 19-3 ¶¶ 4–5].

Plaintiffs request $13,521.39 in lost investment income based on a calculation of the "actual, annual rates of return the Plan received on its investments during the years in question," an award of damages that can also be characterized as prejudgment interest. See [id. ¶ 8].[2] With the exception of cases brought under 29 U.S.C. § 1132(g)(2), ERISA is silent as to pre-judgment interest. See Colon Velez v. P.R. Marine Mgmt., Inc., 957 F.2d 933, 941 (1st Cir. 1992). The First Circuit has instructed that "[b]ecause [ERISA] is silent as to pre-judgment interest and the granting of pre-judgment interest falls under the equitable powers of the district court," district courts may look to outside sources, such as state law, to set the pre-judgment interest rate. See id. "[A] court that elects to award prejudgment interest in an ERISA case has broad discretion in choosing a rate," and "equitable considerations should guide the exercise of judicial discretion." Cottrill v. Sparrow, Johnson & Ursillo, Inc., 100 F.3d 220, 225 (1st Cir. 1996), abrogated on other grounds, Hardt v. Reliance Standard Life Ins., 560 U.S. 242 (2010).

In a breach of fiduciary duty case, the Massachusetts Supreme Judicial Court ("SJC") has held that "[w]hen a breach of trust occurs, the beneficiary of the trust is 'entitled to be put in the position he would have been in if no breach of fiduciary duty had been committed.'" Woodward Sch. for Girls, Inc. v. City of Quincy, 13 N.E.3d 579, 599 (Mass. 2014) (quoting Berish v. Bornstein, 770 N.E.2d 961, 977 (Mass. 2002)). The SJC reasoned that in cases where the breach impacted the growth of the trust's assets, making the beneficiary whole "may require awarding

---

[2] Plaintiffs originally requested statutory prejudgment interest in lieu of lost investment income but have since withdrawn the request. See [ECF No. 19 ¶¶ 2–3; ECF No. 21 at 8–9].

9

interest beginning from the time of the breach, such that the trust's assets resemble what they would have but for the breach."  Id.

Here, in order to make Plaintiffs whole, an award of damages should include pre-judgment interest, or lost investment income, because Plaintiffs have demonstrated that they would have invested the Plan assets that Defendant wrongly appropriated.  See [ECF No. 19 ¶ 2; ECF No. 19-3 ¶ 8].  The Court finds Plaintiffs' proposed rates of pre-judgment interest, which reflect the actual returns of the Plan during the relevant time frame, to be equitable and a sufficient guard against any risk of overcompensation and concludes that Plaintiffs are entitled to $13,521.39 in lost investment income.  See [ECF No. 19-3 at 6–9].

ERISA gives the Court discretion to award reasonable attorney's fees and costs.  29 U.S.C. § 1132(g)(1).  In support of its request for attorney's fees, Plaintiffs provided the Court with time entries for attorneys who worked on this matter.  See [ECF No. 19-2 at 4 (providing time entries); ECF No. 21 at 9 (clarifying request is for $8,587.50)].  Upon review of this documentation, the Court finds that attorney's fees in the amount of $8,587.50 are reasonable.  The documentation also supports the request for $450 in costs.  [ECF No. 19-3 ¶ 7].

Upon consideration of Plaintiffs' motion for entry of a default judgment and accompanying affidavits and materials described above, the Court agrees that Plaintiffs are owed a total of $77,070.46.

### III.     CONCLUSION

Accordingly, Plaintiffs' motion for a default judgment [ECF No. 19] is GRANTED.  Default judgment shall hereby enter against Donald R. Herold, Jr. in the amount of $77,070.46.

**SO ORDERED.**

September 4, 2019  /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE